Commonwealth *v.* Hirsch, Appellant.

Submitted September 10, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Victor F. Cavacini,* Assistant Public Defender, for appellant.

*Howard R. Miller,* Assistant District Attorney, and *George J. Joseph,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, November 16, 1973:

Late on an October night in 1967 the home of an elderly couple was intruded upon by at least four stocking-masked men, one of whom was armed with a pistol. After binding and gagging the couple, the men proceeded to ransack the house, and ultimately removed a safe which contained, according to the testimony of the victims, nearly $17,000 in cash, jewelry and rare coins and bills. The safe also contained $150,000 in bonds which the culprits apparently considered to be non-negotiable by them. The identity of the thieves remained a mystery to the police until September of 1968 when a Mrs. McMurtrie, the abused paramour of one of the co-defendants, informed. It is the testimony of this Mrs. McMurtrie which forms the basis of Hirsch's appeal.

Mrs. McMurtrie testified that she cohabited with the co-conspirator Strohl for many months preceding and succeeding the night of the robbery. She testified that

on the night of the robbery she returned home to find Strohl and a Mr. Hirsch, whom she had known for 13 years, in the kitchen. Before them lay a table full of money, jewelry and old and unusual coins and bills which they were in the process of counting and sorting into piles. She then gave a hand in the effort. Shortly thereafter there was a knock at the door and Hirsch, drawing his gun, told her to see who it was. It was another of the co-defendants. The four then completed the counting, put the jewelry in a bag, and the three co-defendants each took a pile of money, each containing more than $3000. It should be noted that all this testimony was not objectionable so far as the appellant Hirsch was concerned, and while admittedly circumstantial, was greatly supportive in establishing the requisite conspiracy foundation.

Mrs. McMurtrie also testified that on other occasions Strohl described the robbery to her in Hirsch's presence, and that Hirsch and his accomplices discussed the extent and use of their proceeds from the crime. She described an incident where Hirsch and Strohl were out with her in an automobile and pointed out the victims' residence, Hirsch remarking as they passed, "We'll see you again sometime." With the recitation of these incidents and numerous others of similarly damaging import, she provided the Commonwealth with more than enough evidence to win convictions on the conspiracy and robbery charges.

Nevertheless, the appellant first argues that the lower court abused its discretion in refusing to grant the appellant's pre-trial motion for severance. The crux of the argument is that most of the testimony of the state's principal witness was hearsay objectionable as to Hirsch even though admissible against other co-defendants. Thus, appellant argues, he was obviously prejudiced by the joint trial, as indicated by the fact

that the one alleged co-conspirator who was granted a severance was never thereafter convicted. We disagree.

It has long been the law in Pennsylvania that the decision on whether to grant a motion for severance is vested in the sound discretion of the trial court, Pa. R. Crim. P. 219(d) (1973). In *Commonwealth v. Bruno,* 203 Pa. Superior Ct. 541, 558 (1964), this court stated: "The consolidation or separation of indictments is a matter for the trial judges, whose conclusion will be reversed only for obvious abuse of discretion or prejudice to the defendant." See also *Commonwealth ex rel. Bolish v. Banmiller,* 396 Pa. 129, 151 A. 2d 480 (1959); *Commonwealth ex rel. Lockhart v. Myers,* 193 Pa. Superior Ct. 531 (1960), *cert. denied,* 368 U.S. 860 (1961). However, it would appear to be true that if most of Mrs. McMurtrie's testimony was inadmissible hearsay as to Hirsch, a severance should have been granted. If, however, there was adequate proof of a conspiracy, then the statements of any one conspirator vicariously become the admissions of all the others so long as the statements were made in furtherance of the conspiracy and during its continuation. See, e.g., *Commonwealth v. Wilson,* 394 Pa. 588 (1959). See also 2 Jones on Evidence §13:25 (6th ed. 1972). Adequate proof of a conspiracy is not proof beyond a reasonable doubt, but merely proof by a fair preponderance of the evidence sufficient to establish a foundation for introducing the admissions. The point at which the evidence is sufficient in that regard is determined by the judge and not the jury. 2 Jones on Evidence §13:25 (6th ed. 1972), McCormick on Evidence 645 (2nd ed. 1972). See also *United States v. Geaney,* 417 F. 2d 1116 (2d Cir. 1969); *Carbo v. United States,* 314 F. 2d 718 (9th Cir. 1963). "[I]t must first be proved by other evidence that a conspiracy existed at the time when the statements were made. . . . But in such a case much is left to the discretion of the court as to the order of testimony." 2 Jones on Evidence §13:25 at p. 467 (6th ed. 1972). In the

instant case there was more than sufficient testimony supplied by Mrs. McMurtrie to establish the required foundation for the admissions made by others out of the appellant's presence. Contrary to the appellant's assertions virtually all the testimony of Mrs. McMurtrie was admissible against Hirsch, and a separate trial would only have caused repetitious testimony at great time and expense to the Commonwealth. "To have granted separate trials would have entailed a repetition of the same testimony. All the charges grew out of the same occurrences. There was a close relationship between the substantive offenses and the conspiracy which justified a joint trial. *In a conspiracy charge, defendants should generally be tried together." Commonwealth v. Schwartz,* 210 Pa. Superior Ct. 360, 385 (1967) *aff'd* 432 Pa. 522 (1968), *cert. denied,* 398 U.S. 957 (1970). The trial court properly denied the appellant's motion for a severance.

The appellant next argues that the admission into evidence of the out-of-court inculpating statements of his partners in crime somehow runs afoul of the rule established by the Supreme Court in *Bruton v. United States,* 391 U.S. 123 (1968).[1] Appellant misconceives the applicability of *Bruton.* In the instant case each co-defendant took the stand and was subject to cross-examination by the other co-defendants. *Bruton* finds support in the Confrontation Clause of the Sixth Amendment, and the Supreme Court has already spoken to the issue of whether the rule applies to the out-of-

---

[1] The holding in *Bruton* was that "since (the declarant-co-defendant) did not testify, the introduction of his confession added substantial weight to the government's case in a form not subject to cross-examination, thereby violating Bruton's Sixth Amendment right of cross-examination, and that this encroachment on Bruton's constitutional right could not be avoided by a jury instruction to disregard the confession as to Bruton." *Bruton v. United States,* 20 L. Ed. 2d at 476.

court admissions of co-defendants who take the stand at trial. In *Nelson v. O'Neill*, 402 U.S. 622 (1971), the Supreme Court held that any *Bruton* error is cured by a full and effective cross-examination, and that the cross-examination is full and effective even though it only elicits the denials of the co-defendant that he had ever made the damaging statements. Had there been any *Bruton* error, the fact that the co-defendants took the stand would have cured it.

Furthermore, the *Bruton* rule has no application in cases where a conspiracy is shown. In *Dutton v. Evans*, 400 U.S. 74 (1970), a Georgia statute provided a constructive conspiracy of concealment when co-defendants cooperated in suppressing evidence of their jointly shared guilt. It was broader than most conspiracy statutes in that it admitted into evidence statements against the non-declarant which were made during the concealment stage of the conspiracy. The court held that *Bruton* did not reach the statements of co-conspirators even when the conspiracy was a fiction statutorily created to allow the introduction of evidence which would otherwise be hearsay.

Finally, appellant argues that the trial court erred in refusing to quash the indictment since it was based exclusively on the testimony of Mrs. McMurtrie. This argument lacks merit. We have already spoken to the issue of the admissibility of that testimony. In any event, the Pennsylvania rule has long been that indictments may be returned even though they are based upon hearsay or evidence otherwise unacceptable at trial. *Commonwealth v. Dessus*, 423 Pa. 177 (1966), held that the lower court erred in quashing an indictment that was based solely on hearsay testimony. The Court adopted the reasoning expressed in *Costello v. United States*, 350 U.S. 359 (1956) and stated: "The law is well settled in Pennsylvania that an indictment can be found by a Grand Jury based upon hearsay testimony

or upon evidence which was incompetent or inadequate to make out a prima facie case." *A fortiori* the lower court properly denied the appellant's motion to quash in the instant case.

The judgment of the trial court must therefore be affirmed.