## Santella v. Merchants Mutual Insurance Co.

*George B. Stegenga,* for plaintiff.

*Andrew J. Banyas, III,* for defendant.

*Harry J. Cancelmi,* for additional defendant Frank J. Paletta.

*John A. Stets,* for aditional defendant Joseph Krivan, Jr.

GRIMES, *P.J.,* November 26, 1986— This issue comes before the court on a motion by the additional defendants to strike videotaped deposition of witness Ronald Arnold in the latest stage of a long and complex civil suit by original plaintiff Santella against original defendant Merchants Mutual Insurance Company (MMIC).

Plaintiff filed his original complaint in assumpsit on October 22, 1982, claiming proceeds of an insurance policy issued by MMIC as the result of a fire at plaintiff's place of business on April 12, 1982. MMIC later filed a cross-complaint seeking to join additional defendants Joseph Krivan, Jr., and Frank J. Paletta, petitioner herein.

On June 4, 1984, following a jury trial in the U.S. District Court for the Western District of Pennsylvania in Pittsburgh, Pa., additional defendant Krivan was convicted of arson for setting the fire at plaintiff's place of business in 1982. His appeal was denied on September 26, 1984 by the U.S. Court of Appeals. During the arson trial, certain testimony was offered alleging that Krivan had set the fire at

the request of Paletta who had allegedly paid Krivan money to carry out the task. On November 23, 1984, MMIC filed its writ to join Paletta.

On December 20, 1984, MMIC filed its additional complaint. Objections thereto were timely made and on March 8, 1985, this court overruled the preliminary objections and granted joinder of Paletta as an additional defendant along with the convicted arsonist Krivan. Paletta, however, was not named as a co-conspirator in Krivan's indictment, nor was he joined in the arson trial as a co-defendant.

On October 24, 1986, as a step in the discovery process for this suit, defendant MMIC deposed a witness, one Ronald Arnold, at the State Regional Correctional Facility at Mercer, Pa. where he is now serving a sentence for an unrelated criminal act. Paletta's attorney was present at the deposition and made timely objections, conducted a properly vigorous cross examination, and objected to the videotaping of Arnold's statements and cross examination. MMIC videotaped the deposition for possible presentment to jury or bench in the upcoming civil trial on insurance policy coverage.

On October 27, 1986, petitioner made a timely motion to hold the videotape inadmissible at trial, and seeking to compel the appearance of the witness at the trial itself, in accord with the Sixth Amendment of the U.S. Constitution guaranteeing defendants the right to confront witnesses at time of trial and to cross examine them in the presence of the trier of fact. On November 12, 1986, oral arguments were held on the question and written briefs were submitted by the parties.

## DISCUSSION

ISSUE: Whether hearsay statements averring a party's participation in an alleged criminal conspir-

acy are admissible at trial without separate or independent proof that such a conspiracy existed, other than the admissions of a co-conspirator made in pursuance of the common plan.

At the videotaped deposition at Mercer Correctional Facility, Paletta requested MMIC to make an offer of proof for the proposed testimony of Ronald Arnold. MMIC offered the testimony of Arnold to show that Krivan had made statements prior to the fire and statements after the fire took place implicating Paletta in a criminal plan to set the fire for lucre. According to Arnold, Krivan solicited Arnold's help in setting the blaze at plaintiff's place of business, that Arnold refused this solicitation, and that Krivan told Arnold that he was performing the task for Paletta.

MMIC, in effect, offers Arnold's testimony of Krivan's statement that Paletta said he wished to burn down plaintiff's place of business and would pay to accomplish this objective. This is not only hearsay, nor double hearsay, but triple hearsay, by way of two different out-of-court exchanges and by two convicted felons. This is the worst kind of example (or perhaps the best kind of example) of situations where hearsay statements become repeated, creating in effect rumor, and illustrates precisely why the courts of this Commonwealth refuse to admit such statements except under certain carefully restricted exceptions, and even then only from the first person to hear the declaration, never from the second and third persons who hear someone say that someone heard someone say the declaration in question.

"When a statement is offered in evidence to prove the truth of the facts asserted therein, speaker's credibility and the circumstances of the statement's utterance becomes basic to the proper evaluation of

the statements . . . so that the hearsay rule excludes such evidence unless the speaker is on hand to testify personally." U.S. ex rel. Sullivan v. Cuyler, 553 F. Supp. 1236 (D.C. Pa. 1982); Commonwealth v. Williams, 262 Pa. Super. 508, 396 A.2d 1286 (1978); Commonwealth v. DiSilvio, 232 Pa. Super. 386, 335 A.2d 785 (1975). Such scrutiny must be brought even more firmly to bear when the hearsay is offered in recorded form. Commonwealth v. Paskings, 447 Pa. 350, 290 A.2d 82 (1972).

MMIC admits that Arnold's statement is hearsay. They would have this court admit the statement nevertheless under one of the recognized exceptions to the general rule enunciated in Cuyler, supra. They cite Commonwealth v. Tumminello, 292 Pa. Super. 381, 437 A.2d 435 (1984), which states that, "Out of court declarations of a co-conspirator can be admitted against another conspirator provided that declarations were made during the conspiracy and in furtherance of the common criminal design." As for the statements made by Krivan to Arnold after the fire took place, MMIC relies on Commonwealth v. Coccioletti, 493 Pa. 103, 425 A.2d 387 (1981).

Similarly, MMIC relies on Commonwealth v. Hirsch, 225 Pa. Super. 494, 311 A.2d 679 (1973), for the following propositions: (1) If there was adequate proof of a conspiracy, then the statements of any one conspirator vicariously become the statements of all the others so long as the statements were made in furtherance of the criminal plan; (2) The point at which the evidence is sufficient is determined by the judge as a matter of law; (3) Such evidence may be established by circumstantial evidence. (See also Commonwealth v. Bachert, 499 Pa. 398, 453 A.2d 931 (1982).

Defendant cites Commonwealth v. Hassine, 340 Pa. Super. 318, 490 A.2d 438 (1985), which states, "In addition, an accomplice's culpability may be established when, with the intent to promote or facilitate the crime, he solicits the perpetrator to carry out the crime . . . 18 Pa. C.S. §306(c), (d)."

MMIC is asking the court to apply the holdings of these cases to a different set of circumstances than what the courts were considering.

First of all, it is quite clear and incontrovertible that even the "co-conspirator exception" to the hearsay rule applies only to direct hearsay, as for example when Party A wishes to testify that he heard Party B declare something, and not multiple hearsay, as when Party A wishes to testify that he heard Party B state that Party C said that Party D made a declaration. However, even if we assume that somehow the mere fact that a conspiracy has been entered into by some of the persons in this chain of rumor, or even all of them, the exception cannot apply here for the simple reason that the witness Arnold was not part of Krivan's arson conspiracy. MMIC's own pleadings aver that Arnold's deposed statements were to the effect that Krivan solicited his cooperation *and that he refused;* therefore, Arnold is not a co-conspirator of Krivan's in the arson, much less of Paletta, who in fact never spoke to Arnold nor was in his presence at all. Attempted conspiracy is no crime in the Commonwealth and triggers no exceptions.

In order to correctly apply the law to this case, let us hypothetically argue that Arnold became an accessory to Krivan's crime of solicitation by failing to report the solicitation to arson to the authorities in a timely fashion. The hearsay exception still does not apply. First of all, to admit the introduction of a statement when that declarant did not testify at the

trial for the underlying crime, as occurs here where Arnold did not testify at Krivan's trial, would add a prejudicially tainted weight of credibility to the case in a form which is not subject to effective cross examination in a confrontational setting. Even if the declarant was cross examined in the setting outside of the trial, it is error known as "Bruton error" after the case in which the U.S. Supreme Court struck a conviction based on admitting such hearsay under the co-conspirator's declaration exception. Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

MMIC relies on mere dicta from Hirsch, supra., that "any 'Bruton error' may be cured by a full and effective cross examination, even where that cross examination only elicits the denials of the co-defendant that he ever made the statement." However, Arnold is not a co-defendant of either Krivan, in the arson case, nor of Paletta, in this case. Moreover, Hirsch is inapposite where the declarant has not testified before court which is the cure envisioned by the Hirsch Court for Bruton errors. Furthermore, in the earlier but never overruled case of Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court held that since the Bruton rule has no application in instances where the conspiracy is already shown, "further highlighting the Sixth Amendment rationale behind the co-conspirator exceptions to the hearsay rule," that "the conspiracy once proven may admit hearsay declarations by co-conspirators, but, *the hearsay declarations do not prove the conspiracy.*" (Emphasis added.)

The case of Hirsch itself cites U.S. v. Geaney, 417 F.Supp. 1116 (2d Cir. 1969) and Carbo v. U.S., 314 F.2d 718 (9th Cir. 1963), which say clearly that, "It must first be proved *by other evidence* that a con-

spiracy existed at the time when the statements were made . . . " (Emphasis added.)

The Supreme Court has set forth a general rule which amounts to a one-way street: Once the conspiracy is proven, hearsay declarations made by conspirators concerning the criminal design of the conspiracy are admissible; *but*, the hearsay may not be admitted to prove the conspiracy that allows the statements to be excepted from the general bar to admission of hearsay of any kind. Even if, as is not the case here, Arnold had been a co-conspirator of Krivan and/or Paletta, MMIC must still prove the existence of the conspiracy itself, using evidence other than these hearsay declarations, before the declarations are admissible.

The nature of the crime of conspiracy itself, because of its intangibility, often makes it susceptible to no other proof than by circumstantial evidence, and therefore such evidence is given weight in such cases. 18 Pa. C.S. 903(a)(1); Commonwealth v. Roux, 465 Pa. 482, 350 A.2d 867 (1976). The relationships and conduct of the parties, and the circumstances surrounding their activities together, can be examined to deduce that a corrupt confederation exists. 18 Pa. C.S. §903(a)(1); Commonwealth v. Fontana, 265 Pa. Super. 387, 401 A.2d 1361 (1979). Absent independent evidence of a conspiracy through testimony of witnesses or through documentary evidence, that Krivan and Paletta held meetings, spoke on the phone, exchanged monies or instrumentalities of the arson, shared in the fruits of the crime itself or any ill-gotten proceeds thereof, etc., the testimony of Arnold, even if he appears in court, is not admissible.

The court has wide latitude in terms of the order of testimony. (See Carbo, supra). Therefore if MMIC successfully demonstrates the existence of

the conspiracy with independent evidence at the trial, then Arnold's testimony becomes admissible as hearsay excepted. However, even then, because of the multiple rumor which provides the only chain linking Arnold to Paletta, even then the statements would only be admissible against Krivan. In other words, Krivan's admission to Arnold that he and Paletta were engaged in a conspiracy to burn Santella's place of business would be admissible, but Arnold could not go on to state that "Krivan told me . . . that Paletta told him . . . that he was to hire me to set the fire." Only if Paletta were to have made such statements to Krivan directly in the presence of Arnold would Paletta's statements to Krivan be admissible through Arnold.

Insofar as the unavailability of Arnold to appear at court, such has not been shown by MMIC and therefore the video deposition will not be permitted due to the right of the parties to confront an accuser, even in a civil matter, the administrative difficulty in editing a film to be consistent with the foregoing opinion, and the likelihood of presenting portions of a film which could be taken out of context by the jury, and finally, due to the editing and removal of objectionable portions, could be eventually prejudicial to any one of the parties involved in this matter.

## CONCLUSION

Because no independent evidence has been offered to prove that a conspiracy involving Krivan, Arnold, and Paletta existed, the co-conspirator exception to the Hearsay Rule is not applicable to the multiple hearsay of Arnold's deposition, and Arnold's deposition is inadmissible at trial. MMIC has failed to show the impossibility of having Arnold

present at the time of trial and absent such showing, the parties have the right to have the witness present before the tribunal for cross examination. In consideration of the evidentiary problems raised with the videotaped deposition, and the editing necessary to remove objectionable testimony, the likelihood of prejudice to one or more of the parties is greater than any reason which MMIC has shown for not having Arnold present as a witness if they so desire.

## ORDER

And now, this November 26, 1986, the motion to strike videotaped deposition of Ronald Arnold is hereby granted. Original defendant shall be responsible for having said witness in court at the time of trial. However, upon proper motion, the court will enter the necessary order or orders to accommodate original defendant.